**R. J. HEINRICH, Appellant,**

v.

**WHARTON COUNTY LIVESTOCK, INC., et al., Appellees.**

No. 1206.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 27, 1977.

Rehearing Denied Nov. 17, 1977.

Howard A. Lang, Jr., Houston, for appellant.

Larry E. Wadler, Wharton, for appellees.

## OPINION

NYE, Chief Justice.

This is a commercial transaction case. R. J. Heinrich brought suit against Wharton County Livestock, Inc. and Newell Atkinson, Wharton's manager, to recover the value of 102 head of cattle. Trial was to the court without the aid of a jury. Judgment was entered for the defendants Wharton County Livestock, Inc. and Atkinson that Heinrich take nothing by his suit. Heinrich appeals to this Court.

A detailed history of the events leading up to this controversy is necessary to understand the problems presented by this appeal. On October 15, 1973, Heinrich and Francis Truchard entered into a "working agreement" which provided that Truchard was to purchase, pasture, feed and care for cattle for Heinrich who would provide the necessary financial assistance to purchase the cattle. The cattle were then to be sold and the profits divided equally between the parties. In furtherance of this agreement Heinrich purchased 80 head of cattle from Truchard. On December 15, 1973, Truchard attended an auction at the Wharton County Livestock place of business. Truchard purchased 102 head of cattle at this auction paying for them with a series of drafts. Truchard had never purchased cattle from this Livestock Auction Company prior to this sale. The 102 head of cattle were delivered to Truchard's pasture that same day. One week later Truchard resold these same 102 head of cattle to plaintiff Heinrich for the original 80 head of cattle and a small amount of cash. As proof of ownership of the cattle Truchard showed Heinrich the bill of sale from Wharton County Livestock which was marked "paid by draft." Truchard also gave Heinrich a bill of sale for the cattle. Almost immediately upon purchasing the cattle, Heinrich had them branded and made arrangements with Truchard for their pasturing.

Approximately two days before the resale of the cattle from Truchard to plaintiff Heinrich, defendant Wharton County Live-

stock presented Truchard's drafts to his bank for payment which were all returned marked "insufficient funds." On December 28, 1973, six days after the resale of the cattle from Truchard to Heinrich, Wharton filed a financing statement of record covering its interest in the 102 head of cattle.

In early February 1974 Wharton's manager, Atkinson, discovered that the 102 head of cattle sold to Heinrich were being pastured along with the 80 head of cattle previously purchased by plaintiff Heinrich and which were covered by a financing statement filed by Heinrich's bank which had lent him the money for the initial purchase. On February 19, 1974, with Truchard's assistance, Wharton repossessed the 102 head of cattle and then promptly resold them at auction. Very shortly thereafter, Heinrich found out about the repossession. He immediately demanded the return of his cattle from Atkinson and upon Atkinson's refusal to return the cattle, commenced the action now being reviewed by this Court. In addition to seeking recovery from Wharton and Atkinson, Heinrich also sued Truchard and took a default judgment against him for $32,124.60 plus interest and costs.

Heinrich brought suit against Wharton and Atkinson for negligently and without regard for customary and prudent business practices selling the 102 head of cattle to Truchard. It was Heinrich's assertion that he was a bona fide purchaser of the cattle and as such was entitled to a return of his cattle or their value. Heinrich also claimed that Wharton's act amounted to an estoppel and waiver of any claim it may have had in the cattle. Wharton plead as its defense that the sale to Truchard was a cash sale, a conditional sale, or in the alternative that Truchard was acting as Heinrich's agent when he purchased and resold the cattle. The trial court entered a take nothing judgment favorable to defendants Wharton and Atkinson. The trial court made the following findings of fact: 1) that Truchard and Heinrich entered into an agreement to purchase cattle; 2) that Truchard was authorized to purchase, feed and care for the cattle until sold; 3) that Truchard was

Heinrich's agent when purchasing the cattle; 4) that the 102 head of cattle purchased on December 15, 1973 was in furtherance of this agreement; 5) that terms of sale were cash; 6) that Truchard paid for the cattle by draft; 7) that the drafts were not honored; 8) that the memorandum of sale issued by Wharton contained the following language:

"Customers purchasing and paying for livestock through this Company by check or draft, expressly agree that title does not pass to said purchaser, but is retained by owner until the fund is actually received on the check or draft. Such check or draft is accepted only subject to the rules and practices of any bank in which it may be deposited for collection, and is accepted for collection, only as an accommodation to the maker and does not constitute a payment for animals purchased until remittance is received thereon.";

9) that Truchard showed Heinrich the memorandum of sale prior to the return of the drafts; 10) that the agreement between Truchard and Heinrich was in effect when cattle were reclaimed by Wharton; 11) that accepting drafts and giving up possession of cattle was a reasonable standard procedure; 12) that giving Truchard possession of the cattle was not a waiver of the terms of the memorandum; 13) that allowing Truchard to maintain possession of cattle until February 19, 1974 was not unreasonable; 14) that Wharton was unaware of the agreement between Truchard and Heinrich; and 15) that Truchard voluntarily surrendered possession of the cattle.

■ Heinrich presents eleven points of error to this Court. These eleven points may be generally reduced to three basic contentions. The first basic question is whether there was evidence or the evidence was sufficient to support the trial court's findings that Truchard was Heinrich's

agent when he purchased the cattle. First we must determine whether or not a joint venture existed. The essential elements of a joint venture are: 1) mutual right of control, 2) community of interest, 3) agreement to share profits as principals and 4) agreement to share losses, costs or expenses. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1946); *Chandler v. Herndon*, 450 S.W.2d 703 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *Price v. Wrather*, 443 S.W.2d 348 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.). Using this test we find that the "working agreement" which was entered into by Truchard and Heinrich coupled with the testimony of Heinrich himself constituted sufficient evidence to support the trial court's findings and our conclusion that the two were in fact engaged in a joint venture.

■ As a general rule, a joint venture is governed by the same rules as a partnership. See *Thompson v. Thompson*, 500 S.W.2d 203 (Tex.Civ.App.—Dallas 1973, no writ); *Weatherford v. Lee*, 364 S.W.2d 730 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.); *Tex-Co Grain Co. v. Happy Wheat Growers, Inc.*, 542 S.W.2d 934 (Tex.Civ.App.—Amarillo 1976, no writ). Under the partnership act,[1] the knowledge of one partner which affects the partnership is imputed to the other partners. See *Lee v. Durango Music*, 144 Colo. 270, 355 P.2d 1083 (1960). In addition it is clear under § 9 of Article 6132b that each partner is the agent of the other partners when acting in furtherance of partnership business. Therefore evidence showing knowledge of one of the partners to the transaction attributes such knowledge to the other partner as a matter of law. See also *Windom National Bank v. Klein*, 191 Minn. 447, 254 N.W. 602 (1934). *Woolard v. Mobile Pipe Line Com-*

---

1. Tex.Rev.Civ.Stat.Ann., Art. 6132b, § 12 (1970) Partnership Charged with Knowledge of or Notice to Partner

Sec. 12. Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

*pany,* 479 F.2d 557 (5th Cir. 1973) cert. denied 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316. Appellant's points of error 1, 9 and 10 are overruled.

■ Having agreed with the trial court's conclusion of law that Truchard and Heinrich were joint venturers in the purchase of the cattle, the next question is what effect does this have on Heinrich's contention that he was a bona fide purchaser of the cattle from Truchard. The answer is simply that our holding that the partners' agreement was a joint venture is fatal to Heinrich's alleged status as a bona fide purchaser. Sec. 1.201(C9) Tex.Bus. & Com.Code Ann. (Supp.1977) defines "buyer in ordinary course of business" (i.e., bona fide purchaser) as ". . . a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ." Compare § 8.302, Tex.Bus & Com.Code Ann. (1968). The two key elements established by the definition are good faith and lack of knowledge. Merlyn Urbanosky, an employee of Wharton, testified that Truchard told him at the time the drafts were issued that he (Truchard) lacked sufficient funds to pay for them. Therefore Truchard knew the cattle were not paid for at the time he sold them to Heinrich. Since the cattle were purchased in furtherance of their joint business, this knowledge was imputed to Heinrich. Heinrich necessarily had knowledge of the Wharton County Livestock's ownership at the time he purchased the cattle from Truchard. Therefore he was not a bona fide purchaser. Appellant's points of error 2, 3, 7 and 8 are overruled.

■ Next, Appellant Heinrich alleges that Wharton was estopped by its own negligence from asserting title to the cattle and had waived ownership in the 102 head of cattle. The basis of Heinrich's argument is that Wharton, in allowing a man they had never seen or done business with, purchase $51,000.00 worth of cattle by draft and leave the premises without checking his credit was negligence as a matter of law. The management of Wharton testified that it was customary for them to issue bills of sale and relinquish possession of cattle under circumstances similar to those under which Truchard purchased the cattle. In addition, Wharton's expert witness, Clifford Boetcher, testified that the method used by Wharton to check on Truchard's credit was a reasonable check used in the industry. After reviewing all of the evidence, we hold that the trial court's finding that Wharton was not negligent, and therefore could not be estopped by its alleged negligence, was supported by sufficient evidence.

■ The remaining question is whether or not Wharton waived its right to repossess the cattle by allowing Truchard to keep the bill of sale and the cattle after they became aware that the drafts would not be honored. The conditions of the sale printed at the bottom of each bill of sale issued by Wharton prevented the occurrence of the alleged waiver. This condition was to the effect that if the cattle were paid for by check or draft, title did not pass until the check or draft was honored. The incorporation of this condition into the sale meant that Wharton could not waive its title by failure to act, but only by affirmative action.

■ Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bond. & Ins. Co. v. Orkin Exterm. Co.,* 416 S.W.2d 396 (Tex.Sup.1967), *Rio Delta Land Company v. Johnson,* 475 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). The key element of a waiver is intent. *Smith v. City of Dallas,* 425 S.W.2d 467 (Tex.Civ.App.—Dallas 1968, no writ); *Surko v. Harrison,* 391 S.W.2d 115 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). In order to establish waiver there must be a clear and decisive act showing such a purpose. *Cattle Feeders, Inc. v. Jordan,* 549 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1977, no writ). There is no evidence that Wharton ever waived its rights in the cattle sold to Truchard. The evidence demonstrates that after Wharton

became aware that the drafts were not to be honored they perfected their security interest in the cattle and began attempts to locate and repossess the cattle. Appellant's points of error 4, 5 and 11 are overruled.

The judgment of the trial court is AFFIRMED.