FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant,

v.

Ali A. ATTAYI, Appellee.

No. 01–87–00600–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 11, 1988.

Annette T. Kolodzie, Stephen W. Lemmon, Sheinfeld, Maley & Kay, Houston, for appellant.

Don Fogel Morris & Campbell, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a summary judgment. We reverse and remand.

Summary judgment evidence established the following:

(1) In April 1984, Western Bank–North Wilcrest, N.A., now owned by the Federal Deposit Insurance Corporation ("F.D.I.C."), appellant, loaned $40,000 to CanAm Parts, which was owned by Attayi, appellee, and Ryan. This transaction was secured by a $40,000 certificate of deposit.

(2) In June 1984, CanAm obtained another loan, $30,000, from appellant. This loan was secured by the same certificate of deposit, as well as by a computer, a forklift

and CanAm's inventory. Appellee and Ryan guaranteed the loan. Appellee's guaranty was captioned "Specific Guaranty."

(3) In August 1984, appellant renewed the loans, simultaneously increasing CanAm's line of credit to $120,000. Ryan guaranteed the loan. Although there is a document from this transaction captioned "Continuing Guaranty," with a signature that reads "Ali A. Attayi," appellee claimed that this signature was a forgery. Appellant did not base its claims on this document.

(4) Between August and November 1984, appellee sold his interest in CanAm to Ryan.

(5) In November 1984, CanAm executed a promissory note for $120,000. As part of this transaction, appellant continued its security interest in the computer, forklift, inventory, and certificate of deposit. Furthermore, Ryan guaranteed this note, signing a document captioned "Continuing Guaranty." A bank record of this transaction, a "Loan Authorization" form, indicates that Ryan was the only guarantor on CanAm's new loan account.

(6) In March 1985, CanAm's $120,000 balance was reduced by $43,586.39 by applying the certificate of deposit against the debt. CanAm gave a note for the remainder, $75,851.98; Ryan guaranteed this note.

In March 1985, appellant filed suit against the appellee for the balance of the debt—$75,851.98. Later that spring, the trial court granted a writ of sequestration and allowed appellant to seize the computer, forklift, and inventory. In September 1985, the trial court ordered a sale of the collateral. Although the record reflects that a sale took place, the record does not show whether appellee received notice of the sale.

In September 1986, appellant amended its petition and restated its claim, contending that the appellee owed it on the June 1984, guaranty. In April 1987, appellant filed its motion for summary judgment. In May 1987, the appellee filed his response and cross-motion, and the trial court granted this cross-motion, denying appellant's motion for summary judgment.

We begin by noting some general rules about summary judgments. First, when both parties file motions for summary judgment, each must carry his burden and neither may prevail because of the failure of the other to discharge his burden. *The Atrium v. Kenwin Shops of Crockett, Inc.*, 666 S.W.2d 315, 318 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Each being a movant, the burden is the same for both parties: to establish entitlement to a summary judgment by conclusively proving all the elements of the cause of action or defense as a matter of law. *Odeneal v. Van Horn*, 678 S.W.2d 941, 941 (Tex.1984).

Second, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In other words, we consider the summary judgment evidence in the light most favorable to the non-movants. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 593 (Tex.1975).

The non-movant may defeat the opposing party's motion by a showing that at least one element of the movant's cause has not been established with sufficient summary judgment evidence. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979) (holding that the burden on the movant is to prove conclusively *all* essential elements of his cause of action, and that the non-movant must present reasons that avoid the movant's entitlement, presenting summary judgment proof when necessary to establish a fact issue). *See generally* Hittner, *Summary Judgments in Texas*, 22 Houston L.Rev. 1109 (1985).

■ This last statement of the law should not be confused with the rule, appli-

cable to the facts of the instant case, that when multiple grounds for summary judgment are alleged, and a summary judgment is granted, if the order does not state the ground upon which it is stated, the party appealing from the order must show that each of the independent arguments alleged in the motion is insufficient to support the judgment. *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r. e.). These last two rules require that if a summary judgment is granted in a case with numerous theories of recovery, and the trial court's order does not specify the theory upon which its judgment is based, the non-movant must show, on appeal, the failure of at least one element of *each* theory. *Mary Kay Cosmetics, Inc. v. North River Ins. Co.*, 739 S.W.2d 608 (Tex. App.—Dallas 1987, n.w.h.).

We now address the parties' arguments on appeal. In his first point of error, appellant seeks to establish that each of the appellee's summary judgment theories is legally insufficient. The appellee's defenses were: (1) that the guaranty was discharged because the June 1984, $30,000 note was paid; (2) that the guaranty was discharged because of a material alteration of the underlying contract (upon which his guaranty was based); and, (3) that appellant waived its right to enforce the guaranty. Because the trial court did not specify upon which ground it was basing its summary judgment order, appellant argues, as it must, that each of these three defenses failed. We shall address each defense in order.

### (1) *Whether the $30,000 Note Was Paid*

The appellee argues that the June 1984, $30,000 note has been paid; that the underlying debt has been extinguished; and, therefore, that he is not liable on his guaranty. The appellee's summary judgment evidence consists of two items: 1) the note itself, stamped "Cancelled By Renewal"; and 2) a loan history card from appellant that shows no remaining balance due.

The appellee's primary contention is that "Cancelled By Renewal" means "paid." He argues that the loan history card, which recorded all transactions on the loan, showed a payment of $30,000 in principal and $623.43 in interest on August 2, 1984. He argues that because the loan history card recorded a zero balance, the loan was paid.

Appellant counters, first, with a different interpretation of the same two documents, and, second, by reference to the terms of the guaranty itself. Appellant argues that "Cancelled by Renewal" means only that the note was "renewed," not that it was "paid," and that because CanAm renewed the loan, appellant no longer recorded the $30,000 loan on the history card for the June 1984, note, but instead consolidated CanAm's debt on the loan history card for the $120,000 note. (Appellee included this second loan history card in his motion for summary judgment.)

Appellant also points to the language of the June 1984, guaranty which reads as follows:

> Guarantors ... unconditionally guarantee to Bank the prompt payment when due of all indebtedness ... represented by ... the promissory note in the amount of $30,000.00 dated June 12, 1984 ... and *all renewals, rearrangements and extensions* thereof ... (Emphasis added.)

Appellee argues that appellant did not raise the issue of renewal in its motion for summary judgment and, therefore, that this issue is not reviewable on appeal. Appellant, however, pleaded its right to repayment under the terms of the guaranty and included with its pleadings a copy of the guaranty (which contains language about renewal and extension of credit). Furthermore, in its motion for summary judgment, appellant specifically argued that the debt in issue had been renewed. Therefore, the issue is reviewable on appeal.

We observe that the appellee's defense hinges on the significance of the phrase "cancelled by renewal" and the loan history

card. As underscored by each party's plausible interpretation of this evidence, "cancelled by renewal" was not absolute in meaning. The phrase was merely some evidence, not dispositive evidence, about whether the note was paid.

■ By the same token, each party's reliance on the significance of the loan history card emphasizes that these cards were not evidence sufficient to sustain a summary judgment. The histories revealed on these cards could lead to at least two reasonable conclusions: (1) that the $30,000 debt was paid; or, (2) that the record of the debt was moved to a new loan history card. The stamped note and the loan history cards raised an issue of fact as to whether the debt was paid or renewed. The appellee therefore did not establish as a matter of law that the June 1984, $30,000 note was paid. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.,* 705 S.W.2d 193, 195 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (holding that to sustain a summary judgment a defendant must show there is no fact issue as to his defense).

### (2) *Whether a Material Alteration Discharged Appellee*

Appellee argues that appellant "materially altered" the debt contract between Can-Am and appellant when it extended Can-Am's line of credit in August 1984 (to $120,000) without obtaining additional security. The appellee contends that when he guaranteed CanAm's June 1984, $30,000 debt, his subrogation rights in CanAm's collateral for the loan protected him from future exposure on the debt. He claims that, by extending CanAm's line of credit, appellant enhanced his risk of injury because the collateral securing the November $120,000 debt was not sufficient to reimburse him for any amount he might have to pay under the guaranty. He concludes that this result constitutes a material alteration of the debt contract he originally guaranteed.

Appellant contends that the guaranty permits the renewal of debt by its terms, arguing that the guaranty's terms: (1) authorize appellant to release any collateral acquired for the $30,000 note; and, (2) waive any of appellee's subrogation rights in the collateral. Appellant's position is that the appellee consented to the very renewal (or extension) of credit that he now claims is a material variation of the original debt agreement. Appellant relies on the following language in the guaranty:

Guarantors agree that no renewal, extension or rearrangement of ... the Obligations, no release of or substitution for any security ... held by Bank for payment of the Obligations ... and no delay ... or lack of diligence ... in exercising any right or power with respect to the Obligations or any security therefor ... shall in any manner impair or affect the rights of Bank or the obligations and liability of Guarantors hereunder[.];

Guarantors expressly waive any right to the benefit of or to require or control application of any security or the proceeds of any security now existing or hereafter obtained by Bank as security for the Obligations;

If any or all the Obligations are now or hereafter secured in whole or in part, Guarantors agree that Bank may, from time to time, at its discretion, and with or without valuable consideration, allow substitution or withdrawal of collateral or release all or any part of such security, without notice to or consent by Guarantors, and without ... impairing, diminishing or releasing the liability of Guarantors hereunder.

■ The law on guaranties is well-established. A guarantor may require that the terms of his guaranty be followed strictly; the guaranty agreement may not be extended *beyond its precise terms* by construction or implication. *Reece v. First State Bank,* 566 S.W.2d 296, 297 (Tex. 1978); *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428, 430 (Tex.1971); *Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 278 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). It follows, then,

that before the rule of strict construction, or "strictissimi juris," applies, we must determine the rights of the guarantors *from the language of the contract. United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249, 1254 (5th Cir.1985); *Hopkins v. First Nat'l Bank,* 551 S.W.2d 343 (Tex. 1977); *McKnight v. Virginia Mirror Co., Inc.,* 463 S.W.2d at 430.

Because courts strictly construe guaranties, a guarantor may be discharged by the material alteration of a contract between the principal debtor and the creditor. *Old Colony Ins. Co. v. City of Quitman,* 163 Tex. 144, 149, 352 S.W.2d 452, 455–56 (1961); *Straus–Frank Co. v. Hughes,* 138 Tex. 50, 55, 156 S.W.2d 519, 521 (Tex. Comm'n App.1941, opinion adopted); *Whitten v. Metro Bank,* 556 S.W.2d 383, 386 (Tex.Civ.App.—Waco 1977, no writ).

■ A "material alteration" of a contract between a creditor and principal debtor is one that either injures or enhances the risk of injury to the guarantor. *United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 365 (Tex.1968). Material alteration is an affirmative defense. *Bullock v. Kehoe,* 678 S.W.2d 558, 559 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Reliance Ins. Co. v. Dahlstrom Corp.,* 568 S.W.2d 733, 736 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *General Bonding & Casualty Ins. Co. v. Beckville Indep. School Dist.,* 156 S.W. 1161, 1162 (Tex.Civ. App.—Texarkana 1913, writ ref'd). The elements of the defense are threefold; the party asserting the defense must show: 1) a material alteration of the underlying contract; 2) made without his consent; 3) which is to his detriment (*i.e.,* is prejudicial to his interest). *See Old Colony Ins. Co. v. City of Quitman,* 352 S.W.2d at 456; *Straus–Frank Co. v. Hughes,* 138 Tex. at 55, 156 S.W.2d at 521; and, *Whitten v. Metro Bank,* 556 S.W.2d at 386. Thus, the appellee's burden is to prove conclusively these elements as a matter of law; there can remain no genuine issue of material fact. *Montgomery v. Kennedy,* 669 S.W. 2d 309, 310 (Tex.1984); *Whitten v. Metro Bank,* 556 S.W.2d at 386.

Regarding the second of the above-stated elements, consent may be found in the guaranty's language limiting the guarantor's rights and this language will be enforced. *Commerce Sav. Ass'n v. GGE Management Co.,* 539 S.W.2d 71, 82–83 (Tex.Civ.App.—Houston [1st Dist.]), *affirmed as modified,* 543 S.W.2d 862 (Tex. 1976); *C & G Coin Meter Supply Corp. v. First Nat'l Bank,* 413 S.W.2d 151, 154 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.). In short, if the appellee consented in the guaranty to appellant's actions in extending credit without acquiring more collateral, then he cannot satisfy the second element of his defense.

■ The appellee's argument of material alteration is based on impairment of his right of subrogation. We recognize that Texas courts recognize that prejudice to a guarantor in the form of impairment of his subrogation rights discharges the guarantor (to the extent of the value of the security surrendered). *Webb v. Finger Contract Supply Co.,* 447 S.W.2d 906, 907–08 (Tex. 1969). However, in the instant case, the guaranty provided that appellant could either renew the debt or substitute collateral without impairing the appellee's liability; the guaranty further stated that the appellee waived any right in the collateral securing the loan. In extending the loan to $120,000, appellant renewed the June 1984, $30,000 debt (this form of renewal occurred several times). Furthermore, in extending these loans without acquiring more collateral, appellant effectively withdrew some collateral from the $30,000 debt the appellee guaranteed (and applied it to the new debts). The appellee prospectively consented to these changes in the debt's collateralization when he signed the guaranty.

Appellee attempts to avoid this result by arguing that the law neither recognizes nor enforces the waiver provisions of his guaranty, and cites *Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583, 586 (Tex.App.—Austin 1986, no writ), for this proposition. At issue in *Peck* was the right of a guarantor to receive notice of a forced sale of the

collateral that provided security for the debt guaranteed. The Austin Court of Appeals found that a "guarantor" was a debtor within Tex.Bus. & Com.Code Ann. article 9 (Tex.UCC) (Vernon 1968) and, therefore, was entitled to notice under section 9.504. The court also found that because the transaction came within article 9, the guarantor could not waive its right to notice of a forced sale under sections 9.501 and 9.504. *Peck v. Mack Trucks, Inc.,* 704 S.W.2d at 585–86. The *Peck* court held that because the appellee/creditor failed to plead or to establish that it had given the required notice to the guarantor, it was error for the trial court to grant a summary judgment against the guarantor.

■ Appellee raises two other arguments. First, appellee objects to the waivers in the guaranty, claiming they violate Tex.UCC section 9.504. (Appellant does not contest the applicability of Tex.UCC article 9 to the instant case. Furthermore, this transaction does come under section 9.102, which states that article 9 applies to any transaction which is intended to create a security interest in personal property. Because the loan between CanAm and appellant was secured by personal property [in the form of a certificate of deposit, a computer, inventory, and a forklift], the law of article 9 applies.) Nevertheless, the waivers to which the appellee objects are not of the variety condemned by section 9.504 and the court in *Peck.* These provisions are not waivers of notice of forced sales, which are condemned by section 9.504. These are waivers of any beneficial interest the appellee might have in the collateral. In signing the guaranty, appellee agreed to incur liability for renewals and extensions on the primary obligation and to waive his right to complain if the bank allowed a substitution or release of collateral.

Texas courts have enforced guaranty provisions like those in the instant case: *Hernandez v. Bexar Co. Nat'l Bank,* 710 S.W.2d 684, 688–89 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Lawyers* *Title Ins. v. NorthEast Texas Dev. Co.,* 635 S.W.2d 897, 899 (Tex.App.—Tyler 1982, no writ); *Brazosport Bank v. Travis,* 617 S.W.2d 729 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); and, *Schubiger v. First Newport Realty Investors,* 601 S.W.2d 218, 220–21 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Universal Metals and Mach., Inc. v. Bohart,* 539 S.W.2d 874, 877 (Tex.1976).

The early case of *First Nat'l Bank v. International Sheep Co.,* 29 S.W.2d 513 (Tex.Civ.App.—El Paso 1930, writ ref'd) is instructive, even though it predates the Texas UCC. In that case the bank sought to enforce the terms of a guaranty in order to recover on a debt that had resulted from several renewals and extensions of credit. The guarantor argued that the result of the bank's renewal and extension of the debt was a material alteration of the original debt contract and, therefore, that the court was required to find him discharged. Although the court held that the debt was discharged (because when a debt is extended several times over the amount guaranteed, equity requires that all money received by the bank from sale of collateral, etc., first be applied to the amount guaranteed), the court noted that guaranty provisions waiving the right to complain about extensions and renewals of debt were enforceable, *even* in light of the rule of *strictissimi juris. Id.,* at 519.

Second, the appellee makes reference to the fact that his guaranty was captioned "Specific Guaranty," arguing that because he made a specific guaranty, appellant cannot expand his liability to that which would exist were it a "continuing guaranty." Texas courts recognize the distinction between a "specific" and a "continuing" guaranty. *See, e.g., Straus–Frank Co. v. Hughes,* 138 Tex. at 53–54, 156 S.W.2d at 520–21; *Hercules Exploration, Inc. v. Halliburton Co.,* 658 S.W.2d 716, 724 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.); *Blount v. Westinghouse Credit Corp.,* 432 S.W.2d 549, 553 (Tex.Civ.App.—Dallas 1968, no writ). *See also* T. Conner, *Enforc-*

ing Commercial Guaranties in Texas: Vanishing Limitations, Remaining Questions, 12 Tex.Tech.L.Rev. 785, 791 (1981). However, the determination of a guaranty, as to whether it is specific or continuing, is not based on the title of the instrument. It is fundamental that in interpreting a written instrument, greater weight is given to the operative contractual clauses of the agreement. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 288 (Tex. 1978). An instrument is that which its language shows it to be, without regard to what it is labeled. *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 407, 322 S.W.2d 597, 600 (1959).

■ Notwithstanding the caption to the contrary, the guaranty could be read as contemplating a future course of dealings between CanAm and appellant. If this were the case, then appellee expressly waived any objection he might have to a change in the collateralization of the debt. Therefore, an issue of fact remains as to whether the guaranty in the instant case is a specific guaranty as far as renewals and extensions of the $30,000 debt are concerned. (We note that even a specific guaranty may contain consent to renewal, extension, or modification of the principal obligation. *See* T. Conner, *Enforcing Commercial Guaranties*, 12 Tex.Tech.L.Rev. at 814–17.)

The appellee did not conclusively establish the elements of the affirmative defense of material alteration and, therefore, did not carry his burden. *Montgomery v. Kennedy*, 669 S.W.2d at 310–11; *Swilley v. Hughes*, 488 S.W.2d at 67.

(3) *Whether Appellant Waived Any of Its Claims Against Appellee*

Appellee argues that appellant's actions subsequent to June 1984 (the effective date of the note and, therefore, the guaranty) constitute a waiver of any claims based on the guaranty. Appellee bases his argument on the following events: (1) the extension of credit to CanAm in August 1984,

and the concomitant attempt to acquire new guaranties from both appellee and Ryan; (2) the extension of credit to CanAm in November 1984, and the loan authorization form for this transaction, which reflects only Ryan as a guarantor; and, (3) the extension of credit in March 1985, and the related documents, which again indicate only Ryan as a guarantor.

Appellant counters by contending that appellee failed to establish every element of his waiver defense. Specifically, he claims that appellee did not satisfy the intent and reliance elements of the defense.

■ "Waiver" is an affirmative defense; therefore, the appellee must establish conclusively all the essential elements of the defense. *The Atrium v. Kenwin Shops of Crockett, Inc.*, 666 S.W.2d at 318; *Farmers Mut. Protective Ass'n of Tex. v. Thompson*, 365 S.W.2d 226, 227 (Tex.Civ. App.—Houston 1963, writ dism'd w.o.j.); Tex.R.Civ.P. 94.

■ A waiver takes place when one dispenses with the performance of something that he has a right to exact, and/or when one in possession of any right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing or forbearing of which is inconsistent with the right. *Ford v. Culbertson*, 158 Tex. 124, 138–39, 308 S.W.2d 855, 865 (1958). Waiver is defined generally as "the intentional relinquishment of a known right or conduct which warrants the inference of relinquishment of a known right." *Massachusetts Bonding and Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967); *Texas & Pac. Ry. Co. v. Wood*, 145 Tex. 534, 540, 199 S.W.2d 652, 656 (1947).

■ It is well-settled that the elements of waiver include: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and, (3) an actual intent to relinquish the right (which can be inferred from conduct). *See, e.g., Estes v. Wilson*, 682 S.W.2d 711, 714

(Tex.App.—Fort Worth 1984, writ ref'd n.r. e.); *Longview Sav. & Loan v. Nabours*, 673 S.W.2d 357, 361 (Tex.Civ.App.—Texarkana 1984), *affirmed*, 700 S.W.2d 901 (Tex. 1985); *Dobson v. Dobson*, 594 S.W.2d 177, 182 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). There is a split of authority, however, on whether "reliance" constitutes an element of waiver. *See e.g., Swiderski v. Prudential Property & Casualty Ins.*, 672 S.W.2d 264, 268–69 (Tex.App.—Corpus Christi 1984, writ dism'd w.o.j.) (and cases cited therein) (holding the defense of waiver requires no proof of an act by the party in whose favor it is made); *but see Cox v. BancOklahoma Agri–Serv. Corp.*, 641 S.W.2d 400, 404 (Tex.App.—Amarillo 1982, no writ) (holding reliance is an element of waiver if the waiver is implied from conduct).

We need not address the issue of whether reliance is an element of waiver, however, because the appellee failed to establish, as a matter of law, the element of intent.

Intent is the key element in establishing waiver. *Landrum v. Devenport*, 616 S.W. 2d 359, 362 (Tex.Civ.App.—Texarkana 1981, no writ); *Heinrich v. Wharton Co. Livestock, Inc.*, 557 S.W.2d 830, 834 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) (and cases cited therein). The law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference. *Nixon Constr. Co. v. Downs*, 441 S.W.2d 284, 286 (Tex.App.—Houston [1st Dist.] 1969, no writ); *Heinrich v. Wharton Co. Livestock, Inc.*, 557 S.W.2d at 834. In the latter situation, it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party "unequivocally manifested" its intent to no longer assert its claim. *Marriott Corp. v. Azar*, 697 S.W.2d 60, 65 (Tex.App.—El Paso 1985, writ ref'd n.r.e.) (and cases cited therein). This burden is particularly onerous. *The Atrium v. Kenwin Shops of Crockett, Inc.*, 666 S.W.2d at 318.

■ Appellee essentially bases his argument of waiver on the actions of appellant in extending new credit and either acquiring or attempting to acquire new guaranties. The act of acquiring a new guaranty, in and of itself, does not release or destroy the original guaranty. *Shepherd v. Eric Schuster Corp.*, 424 S.W.2d 693, 697 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Warner v. First Nat'l Bank*, 369 S.W.2d 651, 653 (Tex.Civ.App.—San Antonio 1963, no writ). By analogy, then, the act of acquiring or attempting to acquire new guarantees cannot be considered, in and of itself, a waiver of the original guaranty.

■ Appellee also relies on internal documents of appellant that reflect only Ryan as a guarantor of CanAm's debt. Although these documents might constitute some evidence in appellee's favor, they do not, as a matter of law, establish the intent element of waiver. These documents could be interpreted as evidence that appellant segregated CanAm's accounts subsequent to June 1984, because the bank realized that appellee was not a party to these later transactions. This interpretation does not dictate the conclusion that appellant waived its claim against the appellee when it recognized Ryan as a guarantor on accounts that represented debt extended in excess of the June 1984, $30,000 loan. Because they do not expressly state that appellant was relinquishing its claims against appellee, these documents at most create an inference of waiver. The question of waiver is one of fact for the jury when it is a matter of inference. *Ford v. Culbertson*, 158 Tex. at 138–39, 308 S.W.2d at 865; *The Atrium v. Kenwin Shops of Crockett, Inc.*, 666 S.W.2d at 318. Appellee raised, at most, an issue of fact as to whether appellant waived its claim against him and, therefore, failed to establish this affirmative defense. *Swilley v. Hughes*, 488 S.W.2d at 67; *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d at 195.

Appellant has shown that there existed a question of fact about at least one element of each of appellee's defenses. Because appellee failed to establish any defense as

a matter of law, he was not entitled to a summary judgment in his favor. *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d at 757.

Appellant's first point of error is affirmed.

In its second point of error, appellant argues that the trial court erred in denying its motion for summary judgment. Appellant contends that it has conclusively established every element of its cause of action. Appellant further contends that appellee does not challenge the legal sufficiency, nor a single element, of appellant's *prima facie* case and, therefore, appellant is entitled to summary judgment.

Appellee counters with the arguments that: (1) appellant put on no evidence of the required element of notice of foreclosure sale; and, (2) appellant supported its motion for summary judgment with insufficient evidence because the only evidence it used to support its motion was an affidavit of an interested party. It is appellee's contention that this affidavit did not satisfy the strictures of Tex.R.Civ.P. 166–A(3).

■ Appellant's argument that because appellee failed to challenge the legal sufficiency of its cause of action in the trial court, appellant is entitled to summary judgment, is incorrect. A party cannot gain a summary judgment by default. *Cove Inv., Inc. v. Manges,* 602 S.W.2d 512, 514 (Tex.1980); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 678. The legal sufficiency of summary judgment proof may be attacked for the first time on appeal. *Id.*

■ Appellant's summary judgment proof was legally insufficient because it failed to prove notice of sale by foreclosure. As appellee correctly argues, when a guaranty is made on a promissory note that is secured by *personal property,* Texas UCC article 9 applies. *See Tannebaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 772 (Tex.1982) and *Peck v.*

*Mack Trucks, Inc.,* 704 S.W.2d at 586 (holding the term "debtor" as used in section 9.504 includes guarantors of secured transactions). Notice of the forced sale was an element of appellant's cause of action. *Tannebaum v. Economics Laboratory, Inc.,* 628 S.W.2d at 772 (holding that notice to the debtor of a foreclosure sale is an essential element in any deficiency claim within article 9); *Carroll v. General Electric Credit Corp.,* 734 S.W.2d 153, 155 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Appellant cites *Barclay v. Waxahachie Bank and Trust Co.,* 568 S.W.2d 721 (Tex. Civ.App.—Waco 1978, no writ), as authority for the elements of a suit on a guaranty. In *Barclay,* the court stated that the elements of a suit on a guaranty are: 1) proof of the existence and ownership of the guaranty contract; 2) proof of the performance of the terms of the underlying contract by the plaintiff; 3) proof of the occurrence of the conditions upon which liability is based; and, 4) proof of the failure or refusal to perform the promise by the guarantor. *Id.* at 723.

At issue in *Barclay* were guaranties on promissory notes secured by *real property;* on the facts of the case, the *Barclay* court's listing of the elements of a guaranty suit was correct. However, as stated above, the guaranty in the instant case was secured by *personal property.* Therefore, *Barclay* is not controlling.

Although the record reflects that a foreclosure sale of CanAm's collateral took place, appellant neither pleaded nor made any showing that it provided appellee with notice of the foreclosure sale in the fall of 1985. Appellant failed to establish an element of its cause of action. Because of our resolution of this issue, we need not address appellee's contention that the affidavit supporting appellant's motion for summary judgment did not satisfy the requirements of Tex.R.Civ.P. 166–A(3). The trial court was correct in denying the appellant's motion for summary judgment.

Appellant's second point of error is overruled.

The judgment is reversed and the cause is remanded.