**Affirmed and Opinion filed August 22, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00197-CV

---

### ROGER ARORA, MAXIM BAY III, LP, BOMBAY GROUP, LLC, AND BOMBAY MAXIMO, LLC, Appellant

### V.

### MSG BUSINESS, LLC, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2020-70776**

---

### OPINION

In this appeal four defendants-appellants raise one issue: they challenge the trial court's summary judgment in favor of the plaintiff-appellee on its promissory note. The trial court was presented various questions concerning appellants' liability for their obligations for three different loans made to a limited partnership. Today, appellants' collective argument however only implicates the judgment as it relates to one appellant, Bombay Group, LLC ("Bombay Group"), concerning one

loan.  As to that appellant and the sole claim at issue, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee MSG Business, LLC ("MSG") made three loans to Maxim Bay III, LP ("Maxim Bay"):

1. A $300,000 loan ("Loan One") on February 12, 2018, guaranteed by Roger Arora, and also signed by Arora in his representative capacity for Maxim Bay's general partner, appellant Bombay Group.[1]  This loan was renewed one year later on February 12, 2019, but the renewal was signed by Maxim Bay's new general partner, Bombay Maximo, LLC ("Bombay Maximo").

2. A $300,000 loan ("Loan Two") on January 1, 2019.

3. A $100,000 loan ("Loan Three") on March 27, 2019.

Only Loan One and its renewal are at issue in this appeal.  The Loan One note required quarterly interest payments the first year and full payment of the principal amount and all unpaid accrued interest one year following the loan. Throughout 2018, Maxim Bay made quarterly interest payments pursuant to the terms. On February 12, 2019, when the maturity date under the original note arrived, Maxim Bay and MSG executed a renewal promissory note extending the maturity date to February 12, 2020.  The renewal note was again signed by Roger Arora but this time in his representative capacity for Maxim Bay's new general

---

[1] Bombay Group, LLC is also joined in this appeal by fellow named appellants, Maxim Bay, LP, the borrower; Bombay Maximo, LLC, the LP's general partner that succeeded Bombay Group, and Roger Arora, the director, signatory, guarantor and human component to these entities. Though all co-appellants unsuccessfully defended claims asserted against them by Maxim Bay, only Bombay Group asserts any issue on appeal. To the extent the other appellants believe they have issues or arguments in this appeal, they have been waived as inadequately briefed. Tex. R. App. P. 38.1.

partner, Bombay Maximo.

After unsuccessful demands to recover on the renewal note (and Loans Two and Three), MSG filed suit against Maxim Bay, Aurora, and the general partners, including appellant Bombay Group. MSG filed a traditional summary judgment on its claims and a no evidence summary judgment on the affirmative defenses.

MSG provided undisputed proof on each of the elements to support its claim on the renewed promissory note for Loan One. It also provided undisputed proof that at the time the original note for Loan One was executed—and at the time the $300,000 loan was made—Bombay Group was a general partner of the borrower, Maxim Bay.

MSG also sought to prove facts demonstrating that Bombay Group was not shielded from liability under section 153.161 of the Business Organizations Code concerning debts incurred by the limited partnership after Bombay Group ceased to be a general partner. Section 153.161 provides:

> Unless otherwise provided by a written partnership agreement and subject to the liability created under Section 153.162, a general partner who ceases to be a general partner under Section 153.155 is not personally liable in the partner's capacity as a general partner for partnership debt incurred after that partner ceases to be a general partner unless the applicable creditor at the time the debt was incurred reasonably believed that the partner remained a general partner.
>
> (b) A creditor of the partnership has reason to believe that a partner remains a general partner if:
>
> (1) the creditor had no knowledge or notice of the general partner's withdrawal and:
>
> (A) was a creditor of the partnership at the time of the general partner's withdrawal; or
>
> (B) had extended credit to the partnership within two years before the date of withdrawal; or

(2) the creditor had known that the partner was a general partner in the partnership before the general partner's withdrawal and had no knowledge or notice of the withdrawal and the general partner's withdrawal had not been advertised in a newspaper of general circulation in each place at which the partnership business was regularly conducted.

Tex. Bus. Orgs. Code § 153.161.

Significantly, MSG argued and supplied affidavit testimony for the assertion that it "had no knowledge or notice of [Bombay Group's] withdrawal as a general partner of Defendant Maxim Bay III, LP when it agreed to extend the terms of Loan 1."

In its summary-judgment response, Bombay Group provided affidavit testimony contradicting MSG's lack of knowledge of its withdrawal at the time the renewal note was entered. In the affidavit, its managing member Arora states that "[MSG] was fully aware about Bombay Group LLC no longer being a general partner at [Maxim Bay] because I myself notified [MSG] of the same and it was [MSG] itself that prepared the Renewal Note 1, . . . substituting the name therein of Bombay Group LLC to Bombay Maximo LLC." Upon this proof, Bombay Group argued that a genuine issue of material fact precluded summary judgment.

The trial court entered a partial summary judgment for MSG on Loans One and Three, but found there was a fact issue with respect to Loan Two, specifically, whether MSG was aware that Bombay Group was no longer the general partner of Maxim Bay when the Loan Two note was executed. When the case was set for trial, MSG dropped its claims against Bombay Group for Loans Two and Three and the parties stipulated to attorney's fees thus obviating the need for trial. The trial court entered a final judgment on all three loans for MSG against the borrower/limited partnership Maxim Bay and against the guarantors. However, as previously noted, the only issue on this appeal is whether Maxim Bay's general

partner, Bombay Group, is liable on Loan One and its renewal.

## II. ISSUES AND ANALYSIS

The limited partnership's liability under the renewed promissory note is unchallenged. The sole issue raised on appeal concerns the trial court's order granting summary judgment on MSG's claim on Bombay Group's liability stemming from its role as a general partner to the limited partnership with respect to the Loan One renewal note.

### *Standard of Review*

We review a trial court's order granting a traditional summary judgment de novo. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

To be entitled to a traditional summary judgment, the movant must show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant does so, the burden shifts to the nonmovant to produce evidence raising a fact issue. *Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 229 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In reviewing the summary judgment, we consider only grounds that were expressly set forth in the motion. *Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("A summary judgment must stand or fall on its own merits, and the nonmovant's failure to except or respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right.")

5

*Did MSG conclusively prove that Bombay Group was liable under the renewed promissory note executed by the limited partnership?*

The liabilities of the general partner in a limited partnership are like those in an ordinary partnership, that is, "a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners." Tex. Bus. Orgs. Code § 153.152(b). A general partner to a limited partnership is liable for the debts incurred by the partnership. *Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 551 (Tex. 2016). Establishing the general partner's liability for the debts of a partnership is generally a simple matter of proving the party was an acting general partner in the partnership or limited partnership at the relevant time. *See* Tex. Bus. Orgs. Code Ann. § 152.306(a), 153.152(b); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 64 (Tex. 2008) ("a judgment against the partnership is not automatically a judgment against the partner, and that judgment cannot be rendered against a partner who has not been served merely because judgment has been rendered against the partnership."). However, when a creditor seeks to hold a party liable as general partner for a partnership debt incurred before or after the party's tenure as a general partner, pleading and proof requirements are more nuanced. Tex. Bus. Orgs. Code § 152.304(b)(not liable for certain events arising before admission to partnership); Tex. Bus. Orgs. Code § 152.505(d)(subsequently modified debts of the partnership incurred before the date a general partner withdrawal from the partnership); Tex. Bus. Orgs. Code § 153.161 (debts incurred after that partner ceases to be a general partner).

In its motion for summary judgment, MSG originally argued generally that the Bombay Group was statutorily liable for the partnership's debt incurred under the three loans as a general partner and included the nuanced argument that under section 153.161 that Bombay Group was liable for partnership debts (including

6

under the renewed promissory note) that were incurred *after* it ceased to be a general partner. MSG provided affidavit testimony intended to establish that, at the time of the renewal note, MSG reasonably believed that Bombay Group remained a general partner. *See* Tex. Bus. Orgs. Code § 153.161. This fact—MSG's knowledge of Bombay Group's withdrawal—was fervently disputed by Bombay Group with contradicting evidence, recognized by the trial court to present a fact issue, and prompted MSG to drop other claims against Bombay Group based on other promissory notes for subsequent debts (under Loan Two and Three) incurred after Bombay Group ceased to be a general partner.

With the nuanced fact issues under section 153.161 (pertaining to debts incurred after the partner's withdrawal) resolved, MSG retained its claim against Bombay Group on Loan One and its renewal. The Partial Summary Judgment order reflects the court's implicit determination that that even if Bombay Group had withdrawn before the date the renewal note was executed, it had still been a general partner when the debt on Loan One had been incurred. Today, we do not disturb this implicit conclusion.

In the circumstances present in this case, Bombay Group was the undisputed general partner of the partnership at the time the original note for Loan One was executed. After having established the partnership's liability, the path for MSG to hold Bombay Group statutorily liable for the debt incurred by Loan One when it remained a partner was not particularly nuanced. Bombay Group could not automatically escape this liability if it chose to withdraw as a partner. Tex. Bus. Orgs. Code § 152.505(a) ("Withdrawal of a partner does not by itself discharge the partner's liability for an obligation of the partnership incurred before the date of withdrawal.") However, as it recognizes in its Reply Brief, a withdrawn general partner may become discharged of such a liability by circumstances defined under

7

section 152.505, when a creditor has notice of the partner's withdrawal and obtains consent to a material alteration. Tex. Bus. Orgs. Code § 152.505(d). So we briefly address this argument and its place in the proceedings.

We first note in agreement with Bombay Group that the provision is applicable to limited partnerships. Chapter 153 provides that, to the extent chapter 153 is silent, chapter 152's provisions governing general partnerships also apply to limited partnerships. Tex. Bus. Orgs. Code § 153.003(a). While Chapter 153 is silent on the effect of a general partner's withdrawal from a limited partnership on that partner's existing liability, and in particular changes are made to that existing liability, in section 152.505(d), Chapter 152 provides this defense:

> If a creditor of a partnership has notice of a partner's withdrawal and without the consent of the withdrawn partner agrees to a material alteration in the nature or time of payment of an obligation of the partnership incurred before the date of withdrawal, the withdrawn partner is discharged from the obligation.
> Tex. Bus. Orgs. Code Ann. § 152.505(d).

Given the plain direction under section 153.003(a), and the absence of any provision in Chapter 153 governing the discharge of withdrawn partner's liability for debts incurred prior to the withdrawal, we see no basis for concluding that this provision does not apply to general partners of a limited partnership. *See also Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 547 (Tex. 2016)(applying Chapter 152's provision which addresses the limits of partnership's liability certain acts of its partners (152.303) to limited partnerships and acts of limited partners). Notwithstanding our conclusion the provision applies to limited partnerships for at least two reasons today, section 152.505(d), does not afford Bombay Group relief from the judgment that it seeks.

*Bombay Group Failed to Plead or Prove its Statutory Discharge Defense*

In order for a withdrawn partner to be discharged by a renewal note under 152.505(d), there must be a showing that the renewal was a "material alteration" and that the withdrawn partner consented to the renewal. Tex. Bus. Orgs. Code Ann. § 152.505(d).

Although MSG's summary-judgment motion does not address the material facts implicated by Bombay Group's withdrawal as pertaining to the discharge of liability under section 152.505, it was not incumbent upon MSG to address the matter. Section 152.505 provides that, upon a showing of certain facts, a withdrawn partner is discharged from a partnership debt. We construe the provision as an affirmative defense. In fact and function, 152.505 bears too strong a resemblance to a novation or a material alteration affirmative defense to treat it differently procedurally. *See Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 384, 198 S.W.2d 79, 82 (1946) (novation); *Bullock v. Kehoe,* 678 S.W.2d 558, 559 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)(material alteration). Thus, the fact that Bombay Group neither raised section 152.505(d) as an affirmative defense in its pleading nor argued it at the summary judgment phase is fatal. But that's not all.

*No alteration was "material" as to Bombay Group's obligation*

Even presuming Bombay Group had preserved its statutory discharge defense, certain unavoidable facts in the record suggest the defense lacked merit. To preclude MSG's summary judgment on the Loan One renewal under its statutory discharge defense Bombay Group was required to demonstrate issues of material fact concerning MSG's knowledge of Bombay's withdrawal prior to the renewal note, Bombay's consent, and that the renewal note in fact was a "material alteration" to Bombay Groups existing obligation. *See* Tex. Bus. Orgs. Code § 152.505(d). It is the latter element that is particularly deficient on our record.

9

Texas court have historically considered an alteration to an existing obligation *material* when it is "detrimental" to the party asserting the defense. See *Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 497 (Tex. App.—Tyler 2016, no pet.); *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1988, no writ) ("A 'material alteration' of a contract between a creditor and principal debtor is one that either injures or enhances the risk of injury to the guarantor") *citing United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 365 (Tex. 1968). The plain meaning of the word "material" as used section 152.505(d), carries this same meaning, such that the party asserting the defense must show the alteration was detrimental in some way.

Loan One's renewal note differed from the original loan in two respects. The renewal note (1) extended the date of repayment one year, from Feb. 12, 2019, to Feb. 12, 2020, and (2) reduced the interest rate from 20% to 15%, but otherwise involved the same obligation based on the same $300,000 received, a debt incurred on or about February 12, 2018, when Bombay Group unquestionably was the general partner. The reduction in interest and extension of time for repayment of the existing loan were unquestionably *alterations* to the existing agreement. But from Bombay Group's standpoint it had to prove a *material*, or detrimental, alteration. If anything, the renewal of Loan One was favorable to the partnership, not detrimental. The record before us shows nothing about the renewal note that constituted a material, or detrimental, obligation as to Bombay Group.

### III. Conclusion

Having concluded that the trial court did not err we affirm the judgment in all respects.

/s/    Randy Wilson
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

11