NUMBER 13-03-358-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

ROGELIO
FLORES, INDIVIDUALLY

AND AS
LEGAL REPRESENTATIVE 

OF THE
ESTATE OF THERESA FLORES,

DECEASED,
AND TEODORA AND ELIDIA

FLORES,
INDIVIDUALLY AND AS NEXT

FRIENDS
OF JUNE FLORES, A MINOR,                           Appellants,

 

                                                             v.

 

ANN A. SKARO,                                                                     Appellee.

 

      On appeal
from the 214th District Court of Nueces County, Texas.

 

                                                    

                               MEMORANDUM
OPINION

 

                        Before
Justice Yañez, Rodriguez, and Garza

                            Memorandum
Opinion by Justice Yañez

 








Appellants, Rogelio Flores, individually and as
representative of the estate of Teresa Flores, and intervenors, Teodoro and
Elida Flores, individually and as next of friends of June Flores, appeal a
summary judgment granted in favor of appellee, Ann Skaro, on a claim for breach
of an employment contract.  We affirm. 

Background

On July 1, 1995, Rogelio Flores and his wife,
Teresa, retained appellee, as legal counsel, under a contingency-fee agreement
(Aagreement@) to represent them in a personal injury case,
individually and as next of friends of their daughter, June Flores, for a
medication error committed by a pharmacy, whereby the pharmacy erred in filling
a prescription for a drug prescribed to Teresa. 
This error resulted in the hospitalization of Teresa and ultimately
caused her untimely death on November 30, 1995. 


After Teresa=s death, Rogelio=s
parents, Teodoro and Elida, proceeding pro se, instituted a suit affecting the
parent-child relationship, requesting that the court appoint them as joint
managing conservators of June. Appellee had recommended that a change in
conservatorship was advisable because Rogelio=s
behavior apparently was adversely affecting the potential settlement value of
the case.  In support of this allegation,
appellee cites, inter alia, Rogelio=s application for marriage to a seventeen-year-old
minor,[1]
which occurred about five months after Teresa=s
death.  After Rogelio and his parents
agreed to a change in conservatorship and Rogelio signed a waiver of service
and appearance the court entered an order appointing Teodoro and Elida as joint
managing conservators on August 2, 1996.    









In light of the conservatorship suit, on July 31,
1996, appellee and Rogelio also modified their agreement, which was changed to
provide for appellee=s representation of Teodoro and Elida Flores, as
managing conservators and next of friend of June, in the personal injury
case.  Other than this change, the
agreement remained the sameCthe parties agreed to pay appellee one-half (after
litigation expenses) of Aall monies, interest or property which may be
recovered . . .,@[2] in exchange for her representation in the personal
injury case.  Sometime after Teresa=s death, appellee filed a wrongful death suit (Aunderlying suit@) in the case on behalf of Rogelio, individually and
as representative of the estate of Teresa Flores, and Teodoro and Elida,
individually and as next of friends of June. 
Shortly before trial, appellee negotiated a $6.5 million dollar
settlement on her clients= behalf, which the court approved on April 30, 1997.


Approximately three years later,[3]
Rogelio sued appellee, asserting a single cause of action for breach of an
employment contract on the basis that appellee extracted a fee in excess of the
percentage distribution provided for by the parties= agreement. 
The record reflects that the $6.5 million dollar settlement was
distributed as follows:

Settlement                                                      $6,500,000

less
expenses                                                     225,000    








Balance                                                          $6,225,000

less net
amount apportioned to June            3,137,500   (50%
of settlement) 

Balance                                                          $3,137,500    (50% remaining)

less
attorney fees                                            2,823,700 

less
medical and funeral expenses        18,659

Net Balance
allocated to Rogelio                   $295,141

Under the settlement distribution, June=s portion was structured in annuities and trusts,
and Rogelio=s portion was paid to him individually.

On November 27, 2002, Teodoro and Elida, as next of
friend of June Flores, filed a plea in intervention in Rogelio=s suit, asserting a claim to any recovery if
the trial court found that appellee breached the agreement.

On April 30, 2003, in response to the allegations,
appellee moved for summary judgment on both traditional and no-evidence
grounds, asserting affirmative defenses of waiver, ratification, and
estoppel.  The trial court subsequently
granted appellee=s motion. 
However, it did not explain the basis for its judgment and did not
specify whether it was granting appellee's motion on traditional or no‑evidence
grounds. 

Issues on Appeal








In four issues, Rogelio contends the court erred in
granting summary judgment because (1) appellee waived her affirmative defenses,
(2) fact issues existed that precluded appellee from establishing her defenses,
(3) expert testimony was not required to support a claim for breach of an
employment contract, and (4) ample evidence was adduced to support that
appellee committed a breach.   As a
preliminary matter, we first determine whether appellee waived her affirmative
defenses.  We will then consider whether
summary judgment was improper in light of the evidence and pleadings before the
court.

Waiver

Regarding his first issue, Rogelio argues that
appellee waived her affirmative defenses because she failed to plead them in
her original answer.  In contrast,
appellee argues that the defenses were not waived because the trial court
granted her leave to amend her pleadings.  









 Generally, a
trial court=s ruling on an amendment to pleadings is reviewed
for an abuse of discretion.[4]  Affirmative defenses must be pleaded to give
the opposing party notice of defensive issues to be tried.[5]  A party waives an affirmative defense if it
is not pleaded.[6]  However, Texas Rule of Civil Procedure 63
provides that parties may file amendments to their pleadings at such time as
not to operate as a surprise to the opposite party, but that filing within
seven days of the trial date or thereafter requires leave of court, which leave
should be granted absent a showing of surprise by the opposite party.[7]  A summary judgment proceeding is a trial
within the meaning of rule 63.[8]  In considering the propriety of an amendment,
appellate courts liberally construe rule 63.[9]


During pre-trial proceedings, appellee failed to
plead any affirmative defenses in her original answer.  Nevertheless, appellee asserted the defenses
of waiver, ratification, and estoppel in her motion for summary judgment.  Rogelio filed a response arguing, inter
alia, that appellee had waived the defenses because they were not pleaded
in her original answer.  Shortly
thereafter, appellee filed a motion for leave to amend her pleadings to include
the defenses, which the trial court granted that same day.  On the next day, the court entered a final
order granting appellee=s motion for summary judgment.  The order stated, in relevant part, that the ACourt. . .after hearing the arguments of counsel and
examining the pleadings and. . .evidence. . .finds that [appellee] is entitled
to summary judgment in all respects.@








In analyzing this issue, we note that the record
does not contain a docket control order setting a submission deadline for
pleadings, nor does it reflect that a hearing was held on appellee=s motion for summary judgment.  Consequently, we are unable to determine the
precise deadline for amendments to the pleadings.  The record, however, establishes that
appellee received permission to amend her pleadings one day prior to the court=s entry of its order.  Although the order was issued on the
following day, Rogelio=s summary judgment response addressed each defense
asserted by appellee.  Specifically, the
response presented concise arguments in opposition to each defense.  The court=s
order also reflects that the pleadings, which included Rogelio=s response, were considered by the court prior to
entering its order.  

Although Rogelio argues waiver, he does not claim
surprise as a result of the amendment, nor does the record support a finding that
the amendment operated as a surprise. 
Because rule 63 provides the court with discretion to allow a party to
amend pleadings, and the record does not support a finding of surprise, we
conclude the defenses were not waived, and that it was not an abuse of
discretion to allow the amendment.[10]  Appellant=s
first issue is overruled.  

Traditional Motion for Summary Judgment

In his second issue, Rogelio contends summary
judgment on traditional grounds was improper because fact issues precluded
appellee from conclusively establishing any of the affirmative defenses of
waiver, ratification, and estoppel. 

Standard of Review








In a traditional summary judgment, the movant must
establish that no genuine issue of material fact exists as to at least one
element of the non‑movant's claim and that the movant is entitled to
judgment as a matter of law.[11]  When a defendant moves for summary judgment,
it is required to either (1) disprove as a matter of law at least one essential
element of each of the plaintiff's causes of action, or (2) plead and
conclusively establish each essential element of an affirmative defense.[12]  In determining whether there is a disputed
material fact issue precluding summary judgment, proof favorable to the non‑movant
is taken as true, and all reasonable inferences are indulged in his favor.[13]  If the trial court's judgment does not
reflect the grounds upon which the defendant's motion was granted, we must
affirm the summary judgment if any ground raised by the appellee in its motion
for summary judgment is meritorious.[14]

Relevant Facts

Rogelio=s second amended original petition asserted a single
cause of action for breach of an employment contract on grounds that appellee
failed to pay him according to the terms and conditions of the parties= contingency-fee agreement.  The petition states, in relevant part:

By the terms of the employment contract . . .
[appellee] was entitled to retain a fee of fifty percent (50%) of the
settlement, or $1,681,250.00.  She was
also entitled to withhold and extract the sum of $110,426.48 as expenses,
leaving a balance due and owing . . . in the amount of $1,570,823.52.  

On or about the 1st day of
May, 1997 . . . [appellee] paid to Rogelio Flores the sum of $295,141.00,
retaining $1,275,682.52 which should have been paid immediately to your
Plaintiffs.  Same was not paid nor
distributed . . . and such conduct on the part of . . . [appellee] constitutes
a breach of the employment contract, all to the Plaintiff=s damage in the amount of $1,275,682.52.   








In response, appellee filed a motion for summary
judgment, asserting affirmative defenses of waiver, ratification, and estoppel,
and attached as evidence the following documents, which relate to her
representation in the underlying suit: (1) the employment contract between the
parties; (2) a transcript of two pre-settlement hearings; (3) appellee=s sworn affidavit regarding her representation; (4)
a ACompromise, Settlement, Release, and Indemnity
Agreement;@ (5) a final judgment from the underlying suit; (6)
a settlement statement signed by appellee=s clients; (7) a letter allegedly signed by Rogelio
giving appellee settlement authority; (8) nine letters sent by appellee to
Rogelio concerning the status of settlement proceedings; (9) the order
appointing Teodoro and Elida as managing conservators; (10) deposition
transcripts from appellee, Rogelio, Teodoro, and Elida; and (11) a list of
designated witnesses.

The agreement reflects that after litigation
expenses, appellee would receive fifty percent of any proceeds arising from
resolution of the case.  However, the
agreement does not establish how the remaining fifty percent would be
apportioned among the clients.  The
record also does not contain an express modification of the parties= agreement. 
Although the agreement does not indicate the precise amount to which
Rogelio was entitled, the agreement nonetheless establishes that Rogelio had a
right to an undetermined portion of the proceeds arising from the settlement. 

Prior to the court=s
final approval of the settlement, appellee sent a letter dated January 1, 1997,
to all her clients stating, in relevant part, the following: 

Dear Flores Clients: 

 

At the present time there exist [sic] a conflict
between the interest of the estate of Teresa Flores, the child versus the
interest of Rogelio Flores.  I would
advise that Rogelio Flores seek the services of another attorney.  In order to maintain the trial setting and a
resolution to this case . . . Mr. David Phillips is offering his services to
Rogelio Flores as new and independent counsel. 
Rogelio Flores also may seek the services of an attorney of his
choice.  

 

On February 11, 1997, appellee sent a second letter
to Rogelio advising him that the court was holding a hearing because he
(Rogelio) Avoiced some concern over the division of the funds.@  The letter
further stated that








[The] hearing will be for the purpose of resolving
that issue.  For that reason, you may
desire to select independent counsel to work with you.  Since I represent all three plaintiffs, it
would be difficult for me to represent you against June and the estate.  However, I will give assistance to educate
independent counsel in time for the hearing.

 

At the hearing, which was held on February 19, 1997,
Rogelio, appellee, and an ad litem attorney were all present.  At the beginning of the hearing, appellee
stated that the purpose of the hearing was to allow Rogelio to approve or deny
the settlement distribution on the record, and to approve the attorney=s fees in this case. 
The ad litem then informed the court concerning the approximate
distribution of the proposed settlement. 
However, Rogelio voiced no concern regarding the terms of the settlement
or appellee=s continued representation of him. 

On April 7, 1997, appellee=s clients signed a settlement statement that
itemized how the settlement funds would be allocated amongst them.  The statement provided, in relevant part,
that (1) June would receive one-half of the entire settlement proceeds after
expenses, and (2) after the deduction of attorney fees and medical and funeral
costs from his share, Rogelio would receive $295,141.  In his deposition testimony, Rogelio
acknowledged that he signed the settlement statement.

On April 30, 1997, the trial court signed a final
judgment approving the settlement.  The
judgment states, in relevant part, that:

ANN A. SKARO recover her attorney=s fees and expenses for representation of ROGELIO
FLORES, INDIVIDUALLY AND AS LEGAL REPRESENTATIVE OF THE ESTATE OF TERESA FLORES
AND THEODORO FLORES AND ELIDA FLORES AS MANAGING CONSERVATORS OF JUNE FLORES, A
MINOR, from the settlement proceeds paid to ROGELIO FLORES, INDIVIDUALLY AND AS
LEGAL REPRESENTATIVE OF THE ESTATE OF TERESA FLORES.  

 

The record shows Rogelio initialed each page of the
final judgment.  








Analysis

Although the agreement itself is unclear with
respect to apportionment, the propriety 

of the settlement distribution depends on whether
Rogelio waived the conflict of interest, thereby consenting to appellee=s continued representation of him during settlement
negotiations.

Ethical rules generally prohibit an attorney from
jointly representing clients when the clients' interests are adverse to each
other. Texas Disciplinary Rule of Professional Conduct 1.06(b)(1) provides that
a lawyer shall not represent a person if the representation involves a
substantially related matter in which that person's interests are materially
and directly adverse to another client.[15]


The Texas Supreme Court has recognized that the
Restatement of Law provides useful guidance concerning situations of dual
representation.[16]  The Restatement of Law provides that a lawyer
in a civil case may not "represent two or more clients in a matter if
there is a substantial risk that the lawyer's representation of one client
would be materially and adversely affected by the lawyer's duties to another
client in the matter . . . ."[17]








However, clients may waive conflicts of interest and
retain a single attorney to jointly represent them in trial by consenting after
full disclosure of all material facts related to the dual representation.[18]  Although it is prudent for a lawyer to
provide dual clients with at least a written summary of the considerations
involved in instances of dual representation, it is not required that the
disclosure and consent be in writing.[19]


The January 1st letter establishes that a conflict
of interest existed, that it would be difficult for appellee to represent
Rogelio, and that he had the right to retain other counsel.  The letter and subsequent hearing regarding
Rogelio=s concerns also establish that Rogelio knew a
conflict of interest existed.  Despite
his knowledge of the conflict and the material facts related to such
representation, during the settlement hearing, Rogelio did not voice any
objections on the basis that a conflict existed, nor did he complain of
appellee=s continued representation of him.  In the light most favorable to Rogelio,
because Rogelio was provided with written notice regarding the conflict and the
material facts related to such representation, but nonetheless proceeded toward
settlement with appellee as his attorney of record, we conclude that Rogelio
waived the conflict of interest.[20]  We next address whether the summary judgment
evidence conclusively establishes appellee=s defense of waiver with respect to Rogelio=s right to contest the settlement distribution.

Affirmative Defense of Waiver








Regarding the affirmative defense of waiver,[21]
Rogelio argues that factual issues exist regarding the settlement and its
terms.  In contrast, appellee claims that
after the parties executed the agreement, Rogelio, as well as her other
clients, agreed to a distribution of proceeds as follows: (1) after expenses,
June would receive half of the entire settlement amount; and (2) Rogelio would
receive any remaining balance, after attorney=s fees
and medical and funeral expenses were deducted. 
Appellee further claims that Rogelio=s
conduct during the settlement proceedings and thereafter, establish that he
waived his right to contest the settlement. 
Based on this claim, appellee argues that no fact issues exist regarding
distribution of the settlement proceeds. 
As a result, she argues summary judgment on the grounds of waiver was
proper.

The law on waiver is well established.[22]  Waiver occurs when a party either
intentionally relinquishes a known right or engages in intentional conduct
inconsistent with claiming that right.[23]  A party's express renunciation of a known
right can establish waiver.[24]
Silence or inaction, for so long a period as to show an intention to yield the
known right, is also enough to prove waiver.[25]









Intent is the key element in establishing waiver.[26]  The law on waiver distinguishes between a
showing of intent by actual renunciation and a showing of intent based on
inference.[27]  In the latter situation, it is the burden of
the party who is to benefit by a showing of waiver to produce conclusive
evidence that the opposite party unequivocally manifested its intent to no
longer assert its claim.[28]  Although waiver is ordinarily a question of
fact, when the facts and circumstances are admitted or clearly established, the
question becomes one of law.[29]








In this case, other than Rogelio=s claim in his deposition that he did not consent to
the settlement distribution, no other evidence supports his claim that the
settlement constituted a breach of the employment contract.  The agreement did not provide for the precise
apportionment of the clients= settlement proceeds.  The record further reflects that Rogelio, as
well as appellee=s other clients, signed an itemized settlement
statement approving distribution of the settlement proceeds.  In his deposition testimony, Rogelio
acknowledged that he signed the settlement statement.  He also acknowledged receipt of a substantial
amount of correspondence related to the underlying suit, but could not recall
whether he read the settlement statement. 
Despite receiving several letters related to distribution of the
settlement, Rogelio nonetheless maintains that he did not consent to the
settlement distribution.  Rogelio=s deposition testimony, without more, is
insufficient to create a reasonable inference that he did not consent to the
settlement distribution that was previously agreed to by all of appellee=s clients.[30]  Rogelio also initialed each page of the court=s final judgment, which stated that the attorney=s fees would be paid by him, individually and in his
capacity as representative of the estate of Teresa.  For approximately three years after final
settlement of the underlying suit, Rogelio voiced no objection and remained
silent with respect to the propriety of the settlement.  Based on this evidence, we conclude Rogelio=s conduct established his intent to relinquish his
right to challenge the distribution of the settlement proceeds.  Accordingly, we find that appellee
conclusively established the affirmative defense of waiver.  Therefore, summary judgment on traditional
grounds was proper.[31]  As such, we overrule Rogelio=s challenge to the trial court=s grant of summary judgment on appellee=s defense of waiver. 

Conclusion

Because the trial court=s grant of summary judgment on traditional grounds
was appropriate, we need not address the remaining issues on appeal.[32]   We affirm the trial court=s grant of summary judgment in favor of appellee.

 

                                                   


                                                              
                                                       

LINDA REYNA YAÑEZ

Justice

 

 

 

Memorandum
opinion delivered and 

filed
this the 3rd day of November, 2005.

 











[1] 
The record shows that Rogelio obtained parental consent from the minor=s parents prior to filing his
application for a marriage license.





[2] 
A lawyer has a duty not to collect an unconscionable fee from a
client.  See Tex. Disciplinary R. Prof. Conduct 1.04(a);
Nolan v. Foreman, 665 F.2d 738, 741 (5th Cir. 1982).  A fee is unconscionable if a competent lawyer
could not form a reasonable belief that the fee is reasonable.  See
Tex. Disciplinary R. Prof. Conduct 1.04(a). The reasonableness of any
fee depends on the circumstances of the services. See id. at
1.04(b) (detailing factors to weigh in determining reasonableness of fees); Restatement (Third) Of The Law Governing
Lawyers, '' 46, 47 (Proposed Final Draft No.
1, 1996).  Here, the contingency-fee
agreement compensated appellee for her representation in the underlying
wrongful death suit.  Although a lawyer
should be fully compensated for the work and risks the lawyer assumes, in
entering contingency-fee arrangements, lawyers should always remain mindful of
their ethical obligations and the reasonableness of their fee.  See Tex.
Disciplinary R. Prof. Conduct 1.04(a). 

 





[3] 
The record does not contain Rogelio=s original petition. 
However, it does include his second amended original petition dated
August 24, 2001.  On appeal, it therefore
is unclear as to the precise amount of time between the court=s final judgment and the time Rogelio
first filed suit.





[4] 
See Stevenson v. Koutzarov, 795 S.W.2d 313, 321 (Tex. App.BHouston [1st Dist.] 1990, writ
denied).  





[5] 
See Tex. R. Civ. P. 94; Barnett v. Coppell North Tex. Court, Ltd., 123
S.W.3d 804, 816 (Tex. App.BDallas 2003, no pet.). 






[6] 
See Frazier v. Havens, 102 S.W.3d 406, 411 (Tex. App.BHouston [14th Dist.] 2003, no
pet.).  





[7] 
See Lee v. Key West Towers, Inc., 783 S.W.2d 586, 588 (Tex. 1989); Goswami v. Metro.
Sav. & Loan Ass'n, 751 S.W.2d 487, 490‑91 (Tex. 1988).  





[8] 
See Tex. R. Civ. P. 63; Goswami, 751 S.W.2d at 490. 





[9] 
See Diesel Fuel Injection Serv. v. Gabourel, 893 S.W.2d 610, 611 (Tex. App.BCorpus Christi 1994, no writ); Johnson
v. Rollen, 818 S.W.2d 180, 183 (Tex. App.BHouston [1st Dist.] 1991, no writ)
(finding that trial court granted leave to file late pleading where pleading
was filed after deadline imposed by docket control order).





[10] 
See Tex. R. Civ. P. 63; Lee, 783 S.W.2d at 588; Goswami, 751
S.W.2d at 490‑91.  





[11] 
See Tex. R. Civ. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562
(Tex. 1990). 





[12] 
See Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991);
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979). 





[13] 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548‑49 (Tex.
1985).





[14] 
See Star Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Rogers v. Ricane
Enter., Inc., 772 S.W.2d 76, 79 (Tex. 1989).





[15]  See
Tex. Disciplinary R. Prof. Conduct 1.06(b)(1).  





[16] 
See In re B.L.D., 113 S.W.3d 340, 346 n.5 (Tex. 2003) (discussing
waiver for joint representation), cert. denied, 541 U.S. 945
(2004).  





[17]  
See Restatement (Third) Of
The Law Governing Lawyers, ' 128 (Representing Clients with Conflicting Interests in
Civil Litigation) (2000). 





[18] 
See In re B.L.D., 113 S.W.3d at 346, n.5; see generally Tex. Disciplinary R. Prof. Conduct 1.06(c).  





[19] 
See In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 383 n.12 (Tex. 2005) (citing Tex. Disciplinary R. Prof. Conduct 1.06
cmt. 8).





[20] 
See In re B.L.D., 113 S.W.3d 340, 346 n.5;  In re Cerberus Capital Mgmt., L.P.,
164 S.W.3d at 383, n.12.  





[21] 
Appellee claims Rogelio waived any right to challenge the apportionment
on grounds of the affirmative defense of waiver.





[22] 
See Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep.
Auto. Dealers Ass'n,
1 S.W.3d 108, 111 (Tex. 1999).  





[23] 
See Tenneco, Inc. v. Enterprise Prod. Co., 925 S.W.2d 640, 643 (Tex. 1996); Sun
Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987).  





[24] 
See Tenneco,
925 S.W.2d at 643.  





[25] 
See id.





[26] 
See G.H. Bass & Co. v. Dalsan Properties‑Abilene, 885 S.W.2d 572, 577 (Tex. App.BDallas 1994, no writ); Vessels
v. Anschutz Corp., 823 S.W.2d 762, 765 (Tex. App.BTexarkana 1992, writ denied); FDIC
v. Attayi, 745 S.W.2d 939, 946-47 (Tex. App.BHouston [1st Dist.] 1988, no
writ).  





[27] 
See Attayi, 745 S.W.2d at 946-47. 






[28] 
See id.  





[29] 
See Tenneco, 925 S.W.2d at 643. 





[30] 
See Jackson v. Fiesta Mart, 979 S.W.2d 68, 68 (Tex. App.BAustin 1998, no pet.)
(concluding  deposition testimony was
insufficient to defeat summary judgment).





[31] 
See Tenneco,
925 S.W.2d at 643; Attayi, 745 S.W.2d at 946-47.  





[32] 
See Tex. R. App. P.
47.1.