

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00349-CV

_____

GIANT RESOURCES, LP AND MICHAEL GUTIERREZ D/B/A GIANT
RESOURCES/GUTIERREZ JOINT VENTURE, Appellants

V.

LONESTAR RESOURCES, INC., LONESTAR RESOURCES AMERICA, INC.,
AND EAGLEFORD GAS 8, LLC, Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-301950-18

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

This is an appeal from a summary judgment incorporated into a final judgment. Giant Resources, LP (Giant) and Michael Gutierrez d/b/a Giant Resources/Gutierrez Joint Venture (Gutierrez), collectively referred to as Appellants, sued Lonestar Resources Inc. (Lonestar), Lonestar Resources, America, Inc. (Lonestar America), and Eagleford Gas 8, LLC (EG 8), collectively referred to as Appellees, under a theory of quantum meruit for the value of brokerage services allegedly rendered pertaining to oil and gas leases in the Eagle Ford Shale play in Gonzales County. Lonestar and EG 8 are wholly-owned entities of Lonestar America, and the parties treat the Lonestar entities as one entity. The trial court granted Appellees' second motion for summary judgment because Appellants' claim is barred by the statute of frauds. Appellants appealed, contending that the trial court erred by granting that summary judgment motion. Appellees responded that the trial court properly granted summary judgment on the statute of frauds. Appellees also raised three cross points, the first two complaining of the trial court's denial of their Traditional Motion for Summary Judgment (first motion for summary judgment), in which Appellees sought a take nothing summary judgment because a) Appellants' quantum meruit claim is negated by the existence and terms of an express contract, and b) Appellants' quantum meruit claim involved a future transaction or business opportunity, which cannot form the basis of a quantum meruit claim. Appellees' third cross point complains that the trial court erred in not granting their second motion

for summary judgment based on the statute of limitations. Because we sustain Appellees' second cross point, we will affirm the trial court's take-nothing judgment without reaching Appellants' issues or the remaining cross points.[1]

## I.  Background

Because our disposition of the case turns on Appellees' second cross point, which deals with the trial court's denial of their first summary judgment motion, we will focus primarily on the record as it relates to that motion. *See McDaniel v. Smith*, No. 05-15-00473-CV, 2016 WL 1298620, at *2 (Tex. App.—Dallas Apr. 4, 2016, no pet.) (mem. op.).

Giant is owned by Mark Taylor and has long been in the business of brokering land deals between landowners and oil and gas producers across Texas, Oklahoma, and Pennsylvania, including in Gonzales County in the Eagle Ford Shale play. Giant's services also include raising capital for drilling operations, brokering transactions,

---

[1]*See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5–6 (Tex. 1999) (holding that in reviewing an appellant's points of error challenging the propriety of a trial court granting summary judgment, the court of appeals should consider appellee's cross point challenging the denial of appellee's summary judgment motion); *Hutchison v. Union Pac. Res. Co.*, No. 03-01-00196-CV, 2001 WL 1337888, at *3 (Tex. App.—Austin Nov. 1, 2001, pet. denied) (not designated for publication) (holding that court of appeals may affirm trial court's summary judgment on appellee's cross point without deciding other points or cross points where the holding on the cross point is dispositive of the appeal, citing Tex. R. App. P. 47.l); *see also Moseley v. Omega OB-GYN Assocs. of S. Arlington*, No. 2-06-291-CV, 2008 WL 2510638, at *2–3 (Tex. App.—Fort Worth June 19, 2008, pet. denied) (per curiam) (mem. op.) (holding that disposition of cross point challenging improper granting of bill of review in favor appellant rendered point of error by appellant challenging summary judgment in favor of appellee not necessary to be addressed).

drilling oil wells, and performing title work. Lonestar America and Lonestar were two of Giant's clients.

Giant customarily charges a brokerage fee for its services. Sometimes, the fee is calculated by multiplying a predetermined dollar amount by the total number of acres in a particular transaction, which is known as a "fixed fee." Another type of fee involves the broker leasing acreage from landowners and then packaging those leases into one large package and assigning the pre-packaged leases to another production company. In this fee arrangement, the fee is earned from the gross profit generated from assigning the pre-packaged leases to the other production company. Giant typically uses the latter model.

Giant packages leases to market to customers and potential customers. If a customer or potential customer expresses an interest in a package, they negotiate a brokerage fee for Giant's services. Before closing, Giant escrows the leases it negotiated and executed with the landowners, as well as the fully executed assignments of those leases with an escrow agent. When the customer pays the escrow agent, the escrow agent delivers to Giant's customer the executed leases and assignments and delivers the brokerage fee to Giant. Because Giant pre-packages leases in productive areas with title work that it completed, it can charge premium brokerage fees that are higher than most brokers. Prior to the events giving rise to this case, Giant had leased acreage and assigned it to Lonestar on one previous occasion, and Lonestar had paid Giant a brokerage fee. Appellants' counsel conceded

at oral argument that Giant and Lone Star had one completed transaction prior to the events in question. In the time period leading up to the events in question, Giant had earned brokerage fees in Gonzales County of between $500 and $775 per acre, averaging $637.50 per acre.

Gutierrez is the president of Gringo Chase, LLC and is in the business of representing landowners in lease transactions. He and Giant had worked on packaging lease acreages and doing joint ventures over the years. Gutierrez first became the exclusive leasing agent for the first two properties related to this suit on April 30, 2015 (Ruddock and Whiddon properties). Giant and Gutierrez formed a joint venture to package and market these properties and adjoining acreage shortly thereafter.[2]

The preceding year, Giant and Lonestar America had entered into a confidentiality agreement (agreement) on September 29, 2014. The agreement, signed by Taylor as managing partner of Giant and by Frank Bracken as CEO of Lonestar America, provided that "Giant may disclose to Lonestar [America] certain information relating to leases, lands and other properties, which will be detailed in Exhibit A." There was no Exhibit A attached to the agreement. It was contemplated, however, that as Giant presented potential lease opportunities, the parties would describe information relating to that property in an Exhibit A to be attached to the

---

[2]Gutierrez executed the Whiddon and Ruddock representation agreements individually as Michael Gutierrez. Gutierrez, individually, entered into the Giant Resources/Guiterrez Joint Venture.

agreement. If Lonestar America did not have prior knowledge of the oil and gas properties introduced to it by Giant, that would be acknowledged by both parties by a signature on the Exhibit A. Such a joint acknowledgement and execution of an Exhibit A would establish a "Transaction" between the parties. Lonestar America also agreed, among other things, to

> (a) treat Information as confidential, using the same care in storage and handling thereof as normally used for its own proprietary information to prevent theft, unauthorized copying or disclosure;

> (b) not use Information, directly or indirectly, for any purpose other than in connection with evaluating same for the purpose of the Transaction;

> (c) not disclose Information to any Person except as provided in Paragraphs 3 and 4 hereof.

Other significant provisions provided:

> 9. Lonestar agrees that it will not acquire, directly or indirectly, any oil and gas leasehold interest, royalty, overriding royalty, mineral interest or other type of interest affecting the oil, gas or other minerals within the area shown in as Exhibit "A" and made a part hereof for all purposes, during the period of time that this agreement remains in force and effect . . .

> . . .

> 11. The parties hereto understand and agree that unless and until a definitive agreement has been executed and delivered, no contract or agreement providing for a transaction between the parties shall be deemed to exist between the parties, and neither party will be under any legal obligation of any kind whatsoever with respect to such transaction by virtue of this or any written or oral expression thereof, except, in the case of this Agreement, for the matters specially agreed to herein. For purposes of this Agreement, the term "definitive agreement" does not include an executed letter of Intent or any other preliminary written agreement or offer, unless specifically so designated in writing and executed by both parties. Furthermore, this Agreement is not intended

6

to and does not create a partnership, joint venture or any other business combination between the parties. [Emphasis added.]

The agreement had a one-year term, expiring on September 30, 2015.

Around May 1, 2015, pursuant to the terms of the agreement, Giant (Taylor) sent to Lonestar (Bracken) a map labeled as an Exhibit A to the agreement.[3] On this Exhibit A, Giant identified the following properties as available for lease: the Ruddock 400, Ruddock 346, Whiddon 01H API 42-177-33325, the EOG Wells Sllas Boldin, and the Whiddon 800. On May 4, 2015, Giant (Taylor) emailed Lonestar (Bracken) saying the above-referenced property was under Giant's control, that it had been leased but the leases had expired, and that Giant could provide releases from the landowners, and *asked if Lonestar (Bracken) was interested in the property*. On May 6, Lonestar (Bracken) emailed Giant (Taylor) advising that Lonestar had recently reviewed the acreage and that it was not interested because the acreage was too far north (shallow) and was not configured for its needs.

Supposedly unknown to Appellants, beginning shortly after the agreement expired in November 2015 and continuing through the following February, EG 8 leased the above-referenced acreage and surrounding acreage directly from the landowners, thereby bypassing Appellants. Thereafter, Appellants sued Appellees for quantum meruit seeking the reasonable value of the services they claimed to have

---

[3]The information presented to Lonestar by Taylor was part of the marketing effort of the Giant Resources/Gutierrez Joint Venture agreement to pre-package and lease acreage.

provided, which benefitted Appellants.[4] Appellees filed a general denial and raised the statute of frauds and limitations as affirmative defenses. Appellees filed their first motion for summary judgment challenging Appellants' right to recover under quantum meruit because, in part, the services were performed for the purpose of obtaining future benefits or contracts, which quantum meruit does not allow. The trial court denied the first motion. Appellees then filed a second traditional motion for summary judgment contending that Appellants' claim was barred by the statute of frauds and by limitations. The trial court granted the second motion for summary judgment on the statute of frauds defense. The trial court incorporated its order granting the second summary judgment motion into a take nothing final judgment. Appellants have appealed that judgment, and Appellees have raised the cross points identified above.

## II. Legal Standards

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848

---

[4]At oral argument, Appellants' counsel acknowledged that all of the services that Appellants claimed to have provided and for which they are seeking recovery occurred before May 1, 2015.

(Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

## III.   Analysis

**The trial court should have granted Appellees' first motion for summary judgment because a future transaction or business opportunity cannot form the basis of a quantum meruit claim. (Cross-Point Two).**

Because our resolution of Appellees' Cross Point Two is dispositive of the entire appeal, we will address it first. *See* Tex. R. App. P. 47.1. Although Appellants had originally asserted claims in addition to quantum meruit, they abandoned those claims before the court ruled on Appellees' first motion for summary judgment, leaving only quantum meruit at issue. In their first motion, Appellees contended that Appellants were not entitled to recover under quantum meruit because, among other reasons, the services for which they sought to be compensated were performed in anticipation of future business advantage or opportunity. The trial court denied the first motion for summary judgment. We hold that the trial court erred by denying the first motion for summary judgment because Appellants' claim involved future business transactions or opportunities for which compensation under quantum meruit is not allowed as a matter of law.

On September 29, 2014, Lonestar America and Giant executed their agreement. The purpose of the agreement was for Giant to be able to bring to Lonestar America future business opportunities that the two might potentially turn into future contracts. This agreement was not an exclusive agreement between the parties. Giant typically prepared packages like this and shopped them in the industry. While the agreement protected Giant regarding confidentiality of the information it submitted to Lonestar America, it also clearly provided that unless the parties executed a "definitive agreement,"

> no contract or agreement providing for a transaction between the parties shall be deemed to exist between the parties, and neither party will be under any legal obligation of any kind whatsoever with respect to such transaction by virtue of this or any written or oral expression thereof, except, in the case of this Agreement, for the matters specially agreed to herein.

The agreement did not provide for Giant to be paid for its efforts and expenses in preparing information to submit to Lonestar America for it to consider for future transactions, and no "definitive agreement" was ever executed that would have compensated Giant for its efforts and expenses. The information in question was expressly submitted by Giant to Lonestar pursuant to, and as anticipated by, the agreement. Therefore, Giant could have had no reasonable expectation of being compensated for its efforts by the express wording of the agreement. All of the work performed by Appellants was performed before Giant brought the information in question to Lonestar. The information was brought to Lonestar expressly to see if it

was interested in the properties. Whatever work Giant had performed in preparing information to send to Lonestar was, by definition, performed for the purpose of obtaining future business, i.e., a hoped-for "definitive agreement." Such a claim does not justify a quantum meruit recovery. *See Peko Oil USA v. Evans*, 800 S.W.2d 572, 576, 578 (Tex. App.—Dallas 1990, writ denied). As noted by that court,

> Indeed, we conclude further that in the present case it has been conclusively established as a matter of law that *any alleged services alleged to have been performed for Peko Oil by Sunbelt Oil were preliminary services that were performed with a view to obtaining business through a hoped-for contract. Therefore, we conclude further that in the present case, no recovery can be had for the alleged services as a matter of law.* We reach these conclusions because it is elementary in the law governing quantum meruit recovery for work and labor that no recovery may be had for services performed, without thought of direct cash compensation, for business reasons. *Maple Island Farm [v. Bitterling]*, 209 F.2d [867,] 871–72 [8th Cir. 1954]. *Moreover, no recovery can be had for preliminary services that are performed with a view to obtaining business through a hoped for contract.*

*Id.* at 578 (emphasis added); *see also D & R Constructors, Inc. v. Tex. Gulf Energy, Inc.*, No. 01-15-00604-CV, 2016 WL 4536959, at *14 (Tex. App—Houston [1st Dist.] Aug. 30, 2016, pet. denied) (mem. op.) (holding that services performed in expectation of future benefit cannot form the basis of a quantum meruit claim); *Harris Fiberglass Materials, Inc., v. Vought Aircraft Indus., Inc.*, No. 2-06-437-CV, 2007 WL 3317655, at *4 (Tex. App—Fort Worth Nov. 8, 2007, no pet.) (mem. op.) (holding that services performed in anticipation of future business opportunity cannot form the basis of a quantum meruit claim); *K.P. Meiring Constr. Co. v. La Quinta Inns, Inc.*, No. 04-02-00425-CV, 2003 WL 246514, at *2 (Tex. App.—San Antonio Feb. 5, 2003, no pet.)

11

(mem. op.) (holding that quantum meruit does not permit recovery for the expectation of a future business advantage.)

The same is true for Gutierrez. After becoming the representative for the Ruddock and Whiddon properties, he formed the Gutierrez/Giant Joint Venture with Giant to market the pre-packaged acreage to customers and potential customers. Giant and Gutierrez agreed to share the profits and losses from the joint venture, and each had a mutual right of control and management over the marketing and leasing of the acreage. Taylor, as agent of Giant, a joint venturer in the Gutierrez/Giant Joint Venture, provided information to Lonestar about properties controlled by the joint venture expressly pursuant to the agreement between Giant and Lonestar America. Just as Giant had no basis to reasonably expect compensation for services under the agreement that did not result in a definitive agreement, neither did the joint venture. Generally, a joint venture is governed by the same rules as a partnership. *Heinrich v. Wharton Cnty. Livestock, Inc.*, 557 S.W.2d 830, 833 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.). Taylor, as representative of Giant, one of the joint venturers, was acting on behalf of the joint venture, and his conduct was binding on the joint venture. *See* Tex. Bus. Orgs. Code Ann. §§ 152.301–.302 (each partner is the agent of the partnership for the purpose of partnership business and an act of a partner binds the partnership if the act is apparently done for carrying on the partnership business in the ordinary course of business, unless exceptions apply).

Appellants contend that *Peko Oil* "h[as] [no] bearing on the facts and circumstances of this case" because

> when Giant Resources disclosed its confidential information to Lonestar, Giant Resources had already completed its work: it identified and cultivated the relationships with the landowners, investigated and analyzed the acreage in the Eagle Ford Shale formation, and pre-packaged the acreage into a single large tract. All that was left for Lonestar to do was accept the assignment of the pre-packaged leased acreage and pay Giant Resources the negotiated acreage price.

Contrary to Appellants' argument, this very statement proves why *Peko Oil* is persuasive. The very essence of the agreement between Giant and Lonestar America was that Giant could provide information to Lonestar America confidentially but that Lonestar had no obligations to Giant regarding its services unless and until a "definitive agreement" was entered. The only exception was for obligations under the agreement, and there was no obligation under the agreement for payment to Giant or to the joint venture for services in preparing and submitting information when no definitive agreement resulted. Therefore, Giant was doing exactly what *Peko Oil* addressed—providing services for a "hoped-for" contract. Likewise, there was no negotiated acreage price for the pre-packaged acreage. The fact that Lonestar had entered into a transaction on another deal with Giant had nothing to do with an acreage price on this package. Again, the agreement provided that there would be no contracts or obligations between the parties unless a definitive agreement resulted from the information provided to Lonestar on this proposed transaction.

13

Because the quantum meruit claim made by Appellants is based on services provided in anticipation of obtaining a future contract, Appellants are not entitled to recover under quantum meruit as a matter of law. Therefore, the trial court erred when it denied Appellees' first motion for summary judgment. Because the Appellees were entitled to summary judgment that Appellants take nothing on their quantum meruit claim, we will affirm the trial court's take-nothing judgment based on the ruling the trial court should have made on the Appellees' first motion for summary judgment. Appellees' cross point two is sustained.

## IV.    Conclusion

Because we have sustained Appellees' cross point two, we affirm the trial court's judgment that Appellants take nothing from Appellees without reaching Appellants' issues and Appellees' remaining cross points.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  July 21, 2022